UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:                                            Case No.: 13-31119-BKC-JKO
                                                  Chapter 7

**SRAI, INC.**
EIN#XX-XXX7489

    Debtor.

_____/

**TRUSTEE'S MOTION TO APPROVE STIPULATION TO COMPROMISE
CONTROVERSY AND MUTUAL GENERAL RELEASE BY AND BETWEEN
TRUSTEE AND (A) JADE HOLDINGS GROUP, LLC, (B) SURGERY CENTER
OF BROWARD, LLC, (C) STRAX LONGEVITY INSTITUTE A/K/A STRAX
WELLNESS, (D) COSMETIC SURGERY ASSOCIATES OF BOCA D/B/A
BOCA NEW LOOK, (E) BOCA RATON SURGERY, (F) STRAX
<u>REJUVENATION OF BOCA RATON AND (G) JEFF DAVIS</u>**

    Scott N. Brown, as Chapter 7 trustee of the bankruptcy estate of SRAI, Inc. (the "Trustee"), through counsel and pursuant to Federal Rule of Bankruptcy Procedure 9019, files his Motion to Approve Stipulation to Compromise Controversy and Mutual General Release By and Between Trustee and (A) Jade Holdings Group, LLC, (B) Surgery Center of Broward LLC, (C) Strax Longevity Institute a/k/a Strax Wellness, (D) Cosmetic Surgery Associates of Boca Raton d/b/a Boca New Look, (E) Boca Raton Surgery, (F) Strax Rejuvenation of Boca Raton, and (G) Jeff Davis (the "Motion"), and in support thereof states as follows:

## I. <u>Summary of Requested Relief</u>

    1.    By this Motion, the Trustee seeks entry of an order approving a global settlement between, on the one hand, the Trustee and the Bankruptcy Estate, and on the other: (a) Jade Holdings Group, LLC ("Jade"); (b) Surgery Center of Broward, LLC ("SCB"); (C) Strax Longevity Institute a/k/a Strax Wellness ("SLI"); (d) Cosmetic Surgery Associates

of Boca d/b/a Boca New Look ("CSAOB"); (e) Boca Raton Surgery Center, LLC ("BRS"); (f) Strax Rejuvenation of Boca Raton; and (g) Jeff Davis ("Davis"), on the terms and conditions set forth in the Stipulation to Compromise Controversy and Mutual General Release By and Between Trustee and (A) Jade Holdings Group, LLC, (B) Surgery Center of Broward, LLC, (C) Strax Longevity Institute a/k/a Strax Wellness, (D) Cosmetic Surgery Associates of Boca d/b/a Boca New Look, (E) Boca Raton Surgery Center, LLC, (F) Strax Rejuvenation of Boca Raton ("SRBR"), and (G) Jeff Davis (the "Stipulation"),[1] a true and correct copy of which is attached hereto as Exhibit "A" and incorporated by reference.

2.      The Settlement is intended to resolve all matters between, on the one hand, the Trustee and the Bankruptcy Estate, and on the other, the Jade Group Entities and Davis (collectively, the "Jade/Davis Parties"), including, but not limited to: (a) any and all claims that the Trustee may have the right to assert against the Jade/Davis Parties arising from or related to the above-captioned bankruptcy case (the "Bankruptcy Case"); and (b) any and all claims that the Jade/Davis Parties may have the right to assert against the Trustee and the Bankruptcy Estate arising from or related to the Bankruptcy Case.  Among other things, the Stipulation requires the Jade/Davis Parties to: (a) pay the Trustee the total sum of $750,000.40 over a 60 month period; and (b) provide the Estate with certain collateral to ensure payment. The Stipulation was the product of protracted settlement discussions that extended over six (6) months, and contains numerous representations and warranties by the Jade/Davis Parties which were material inducements to the Trustee's entry into the Stipulation. In addition, the Trustee and his professionals reviewed, analyzed and considered a variety of confidential financial and operational information provided by the

---

[1] The settlement subject of the Stipulation shall be referred to as the "Settlement." All capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Stipulation. This Motion contains a summary of the key terms of the Settlement. The terms of the Stipulation control and all parties are urged to review same.

Jade/Davis Parties, upon which the Trustee materially relied in entering into the Settlement. As detailed below, based upon, among other things: (a) his review of the Jade Group Financial Information and the Davis Financial Information; (b) information obtained by the Trustee and his professionals during meetings with Davis and a site visit to the Premises; and (c) the representations and warranties made in the Stipulation, the Trustee believes that the Settlement falls well above the lowest point in the range of reasonableness and thus, meets the *Justice Oaks* standards. Moreover, the Settlement will ultimately result in a distribution to creditors, which would be unlikely in the event of litigation given: (a) the likelihood that litigation would result in the cessation of operations of some or all of the Jade Group Entities; (b) that administrative expenses associated with further investigation and litigation, which already exceed $150,000.00, would likely consume the overwhelming majority of any recovery; and (c) the likely difficulty of collecting on any judgments the Trustee might obtain against the Jade/Davis Parties. Accordingly, the Trustee, in the sound exercise of his business judgment, asserts that the Settlement is in the best interests of this Estate and its creditors.

## II. <u>Facts Supporting Relief Requested</u>

3.      On September 3, 2013, the Debtor, SRAI, Inc. (the "Debtor" or "SRAI"), filed a voluntary Chapter 7 bankruptcy petition. Shortly thereafter, Scott N. Brown was appointed Chapter 7 trustee of the Debtor's bankruptcy estate (the "Estate").

4.      Prior to the Petition Date, the Debtor was primarily engaged in the business of marketing and providing elective surgical and non-surgical cosmetic procedures, including, but not limited to, body, breast, face, hair loss, skin care and vaginal procedures. The Debtor's primary place of business was located at 300 N. University Drive, Suite A-202, Sunrise, Florida (the "Premises"). The Debtor advised the Trustee that it ceased operations immediately prior to filing the Petition.

5.      Paragraph 10 of the Debtor's Statement of Financial Affairs (the "SOFA")(ECF No. 1, Page 33) reflects that on August 30, 2013, the Debtor assigned its leasehold interests in the real properties located at: (a) 4300 North University Drive, Units E200-205, Lauderhill, FL 33351 and (b) 4300 North University Drive, Units A200-A207, F200-F201 and F202-F203, Lauderhill, FL 33351, to SCB and Jade, respectively. The Amendment to SOFA (ECF No. 20, Pages 1 & 2) reflects that on August 30, 2013, the Debtor also transferred all of its scheduled equipment to Jade.

6.      As detailed in the *Trustee's Expedited Agreed Motion for Entry of Order Determining that Appointment of Patient Care Ombudsman is Not Necessary* (ECF No. 11), Debtor's counsel advised the Trustee that the "[c]ustomer lists or other compilations containing personally identifiable information" listed on Line 24 of Schedule "B" (collectively, the "Medical Records") were also transferred pre-petition to Jade and/or SCB.

7.      The Trustee asserts that the Jade/Davis Parties are continuing to operate substantially the same business as the Debtor at the Debtor's former Premises and with most of the Debtor's former employees, equipment, data, intellectual property, customer lists and business model.

8.      The Debtor's 2012 Federal Income Tax Return reflects that its shareholders were: (a) Jeff Davis with a 34.906509% interest; (b) Albert Auer with a 12.498750% interest; (c) Phil Feanny with a 7.499250% interest; (d) Michael Garnick with a 26.627337% interest; (e) Ralph Maling with a 17.288271% interest; and (f) Tammy Pope with a 1.179883% interest. Accordingly, Davis is an "insider" of the Debtor, as that term is defined in Section 101 of the Bankruptcy Code.  Davis is the controlling equity member and an officer, director and/or manager of each of the Jade Group Entities.

**The Inter-Company Transactions**

9.      The Trustee asserts that the business, finances and operations of the Debtor and the Jade Group Entities were inextricably intertwined. Among other things, the Debtor and the Jade Group Entities: (a) possessed commonality of ownership; (b) utilized many of the same employees and independent contractors; (c) shared office space; (d) had common creditors; and (e) routinely loaned funds to each other, which loans were either (i) not evidenced by loan documents, or (ii) which loan documents were not executed and recorded contemporaneously with the purported loan transactions. The Jade/Davis Parties dispute the Trustee's assertions.

10.      The Debtor's Schedule "D" lists, among other purportedly secured debts: (a) $600,000.00 due to Jade Group; and (b) $221,666.00 due to Davis (collectively, the "Jade/Davis Schedule D Debt"). The Trustee disputes Jade's and Davis' characterization as secured creditors and asserts that the Jade/Davis Schedule D Debt can be recharacterized as equity and/or equitably subordinated. The Jade/Davis Parties dispute the Trustee's assertion.

11.      The Debtor's Schedule "F" lists Jade as an unsecured creditor with an "unknown" amount due for "[m]anagement fees." The Trustee asserts that Jade is not entitled to the payment of any management fees, which assertion Jade disputes.

**Schedule "G"**

12.      The Debtor's Schedule "G" reflects the existence of three (3) purportedly executory contracts between the Debtor and Jade with respect to: (a) "Strax Trademark License Agreement;" (b) "Trademark License Agreement for use of Strax. Trademark for successive one year terms unless otherwise terminated upon 30 days written notice;" and (c) "Management Services Agreement dated January 1, 2006, for one year renewing for successive one year terms, terminable upon 90 days after written notice" (collectively, the

"Alleged Debtor/Jade Executory Contracts"). The Trustee asserts that the Alleged Debtor/Jade Executory Leases are not executory leases but rather, property of the Estate, which assertion Jade disputes.

**Potential Causes of Action**

13.     The Trustee asserts that the Debtor's books, records and tax returns reflect that during the four (4) year period immediately preceding the Petition Date (the "Avoidance Period"): (a) in excess of $858,000.00 was paid by or for the benefit of the Debtor to Davis; (b) in excess of $1.6 million was transferred by the Debtor to Jade; (c) approximately $1.4 million was transferred by the Debtor to SCB; and (d) approximately $480,000.00 was transferred by the Debtor to Strax Wellness Center. The Jade/Davis Parties assert, among other things, that good and valid business reasons exist for the above-referenced transfers and that said transfers were made in exchange for reasonably equivalent value, which assertions the Trustee disputes.

14.     The Trustee asserts that the Debtor's books, records and tax returns reflect that as of the Petition Date: (a) BSC owed the Debtor $1.4 Million; (b) Strax Wellness owed the Debtor $1,150,000.00 and (c) Strax Longevity owed the Debtor $550,000.00. The Jade Group Entities and Davis assert, among other things, that the above-referenced inter-company loan receivables are subject to certain set-offs, which assertion the Trustee disputes.

15.     Based upon, among other things: (a) a review of information and documentation provided by the Debtor and third parties; (b) Davis' Section 341 Meeting of Creditors' (the "341 Meeting") testimony; (c) information obtained during settlement conferences with Davis and his counsel; and (d) information obtained by the Trustee and his attorneys, accountants and financial advisors, the Trustee asserts that he possesses a variety of claims and causes of action against, among others, the Jade/Davis Parties,

6

including, but not limited to: (a) successor liability/mere continuation claims against the Jade Group Entities; (b) Chapter 5 and state law avoidance claims against the Jade Group Entities; (c) Chapter 5 and state law avoidance claims against Davis; (d) claims for re-characterization of Davis, and Jade's purported loans to equity and/or subordination; (e) collection of inter-company loans due to the Debtor from the Jade Group Entities; and (f) breach of fiduciary duty claims against Davis. The Jade/Davis Parties dispute the Trustee's assertions.

**Bases for Settlement**

16.     As detailed on the record at the Status Conference on July 15, 2014, in light of, among other things: (a) the expense and uncertainty of litigation; (b) the expense and uncertainty of collection with respect to any judgment(s) the Trustee may obtain against any or all of the Jade/Davis Parties if he were to prevail in litigation; (c) the likelihood that protracted litigation between the Estate and the Jade/Davis Parties would result in the cessation of operations by the Jade Group Entities, which operations are the primary source from which the Jade/Davis Parties can fund a settlement; and (d) in order to provide for the expeditious administration of this Estate and ensure that the totality of any recovery is not consumed on administrative expenses, the Trustee and the Jade/Davis Parties engaged in settlement discussions that spanned over six (6) months.

17.     In connection with the settlement discussions, and as a material inducement to the Trustee's entry into the Stipulation, Davis and the Jade Group Entities provided the Trustee and his professionals with confidential financial statements, tax returns and other financial and operational information for each of the Jade Group Entities (collectively, the "Jade Group Financial Information"), upon which the Trustee materially relied in entering into the Settlement.

18.     In connection with the settlement discussions, and as a material inducement to the Trustee's entry into the Stipulation, Davis provided the Trustee, confidential financial information comprised of: (a) copies of his 2010, 2011 and 2012 Federal income tax returns, plus Form W-2 Wage and Tax Statement for year 2013 (collectively, the "Davis Tax Returns"); and (b) sworn financial disclosures in the form of proposed bankruptcy schedules and a statement of financial affairs (the "Davis Sworn Financial Disclosures," and collectively with the Davis Tax Returns, the "Davis Financial Information"), upon which the Trustee materially relied in entering into the Settlement. The Trustee has agreed to keep the Jade Group Financial Information and the Davis Financial Information confidential absent entry of an order compelling disclosure by a Court of competent jurisdiction after notice and an opportunity to object have been provided to the Jade Group Entities and Davis, and the Trustee has agreed not to oppose any reasonable, good-faith efforts of the Jade/Davis Parties to protect the confidentiality of the financial information.

19.     The Jade/Davis Parties do not dispute that portions of the Debtor's business operations were transferred pre-petition to the Jade Group Entities. However, the Jade/Davis Parties assert that the value of the transfer(s) is substantially less than the value ascribed to them by the Trustee, which assertion the Trustee disputes.

20.     A review of the Jade Group Financial Information, together with representations and warranties made by Davis to the Trustee regarding the financial condition of the Jade Group Entities, reflects that the only meaningful source from which the Jade Group Entities can fund a meaningful settlement with the Estate is continuing cash flow from operations over a multi-year period.

21.     A review of the Davis Financial Information, together with representations and warranties made by Davis to the Trustee regarding his financial condition, reflects, among other things: (a) that Davis had limited non-exempt assets; and (b) that Davis' sole source

8

of meaningful income from which he can fund a settlement with the Estate is his compensation from the Jade Group Entities.

### III. The Settlement

22.     Accordingly, and in light of, among other things, the expense and uncertainty of litigation; (b) the expense and uncertainty of collection with respect to any judgment(s) the Trustee may obtain against any or all of the Jade/Davis Parties if he were to prevail in litigation; (c) the likelihood that protracted litigation between the Estate and the Jade/Davis Parties would result in the cessation of operations by the Jade Group Entities, which operations are the primary source from which the Jade/Davis Parties can fund a settlement; (d) the financial condition of the Jade/Davis Parties as reflected in the Jade Group Financial Information and the Davis Financial Information; and (e) in order to provide for the expeditious administration of this Estate and ensure that the totality of any settlement recovery is not consumed on administrative expenses, the Settlement Parties entered into the Stipulation, which provides for the full and final settlement of all matters between the Jade/Davis Parties on the one hand, and the Bankruptcy Estate on the other.

23.     A summary of the terms of the Stipulation are as follows:

**Settlement Amount**

In full and final settlement of any and all claims the Trustee may have the right to assert against: (a) Davis; and (b) any and all of the Jade Group Entities in the Bankruptcy Case, Davis and each of the Jade Group Entities, jointly and severally, have agreed to pay to the Estate the total sum of $750,000.40 in cleared funds (the "Settlement Amount"), which amount shall be reduced to $700,000.00 if paid within three (3) years of entry of the Approval Order. The payment terms are as follows: (a) four (4) payments of $25,000.00 each, due on November 15, 2014, December 15, 2014, January 15, 2015 and February 15, 2015 (collectively, the "Initial Payments"); and (b) sixty (60) equal, consecutive, monthly

installments of $10,833.33 each (collectively, the "Monthly Installment Payments"), beginning on March 15, 2015, and continuing on the 15th day of each month thereafter, until paid in full.

## Security for Prompt Payment

Each of the Jade Group Entities, jointly and severally, have agreed to grant the Bankruptcy Estate a first priority blanket lien on all presently owned or hereafter acquired tangible and intangible assets of each of the Jade Group Entities to secure payment of the Jade Group Settlement Amount. As additional security for prompt payment of the Initial Payments ($100,000.00), Davis has irrevocably agreed to grant the Estate a second priority lien on his residential real property bearing the address: 1316 Middle River Drive, Ft. Lauderdale, Florida 33304 (the "Davis Real Property"). In addition, Davis has agreed to grant the Estate a second priority lien on his 2011 Porsche Panamera to guarantee the first three (3) Monthly Installment Payments ($32,500.02).

## Acceleration Events

The Settlement provides that the occurrence of any of the following events shall result in the the entire remaining unpaid balance of the Settlement Amount becoming due and payable within seven (7) days of the occurrence of such event unless otherwise agreed to in writing by the Trustee: (a) the sale, assignment, or transfer of more than a total of 10% of Davis' equity interest in any one of the individual Jade Group Entities; (b) the sale, assignment, or transfer of any single asset of any one of the individual Jade Group Entities with a fair market value in excess of $25,000.00; (c) the sale, assignment, or transfer of assets of any of the Jade Group Entities with a fair market value in excess of $75,000.00 in the aggregate in any 24 month period; (d) a change of control in the ownership of any of the Jade Group Entities which results in Davis no longer being in control of any one of the Jade

Group Entities; or (e) Davis either directly or indirectly competing with any of the Jade Group Entities.

**Default Provisions**

In the event of a payment default, including, but not limited to, the failure of the Jade/Davis Parties to pay the total outstanding balance of the Settlement Amount in the event of an occurrence of an Acceleration Event, the Trustee, after providing notice and an opportunity to cure, shall be entitled to entry of consent final judgments as follows: (a) $2 Million less any amounts paid to the Estate against each of the Jade Group Entities, jointly and severally; and (b) $500,000.00 less any amounts paid to the Estate against Davis. However, in the event that the Trustee has received $295,000.12 of the Settlement Amount, the Trustee shall not be entitled to any further relief against Davis, individually.

Additionally, Davis has agreed: (a) not to compete, directly or indirectly, with any of the Jade Group Entities; (b) not to have any direct or indirect involvement and/or affiliation of any type with any person or entity in substantially the same business as that of any of the Jade Group Entities; and (c) not to directly or indirectly solicit, employ or compensate any employee or independent contractor of any of the Jade Group Entities in a business substantially the same as that of the Jade Group Entities, for a period of fifteen (15) months following an event of default under the Stipulation.

**Other Salient Terms**

In the event that: (a) any of the Jade Group Entities commence any insolvency proceeding including, but not limited to, filing a voluntary bankruptcy petition under any Chapter of the Bankruptcy Code, receivership or assignment for the benefit of creditors at any time prior to the Trustee's receipt of the entirety of the Settlement Amount; or (b) an involuntary insolvency proceeding is commenced against any of the Jade Group Entities at any time prior to the Trustee's receipt of the entirety of the Settlement Amount, the Trustee

shall be entitled to immediate and complete stay relief to enforce all rights, remedies and obligations as it relates to the Trustee's security interest in the assets of the Jade Group Entities. In the event that: (a) Davis commences any insolvency proceeding including, but not limited to, filing a voluntary bankruptcy petition under any Chapter of the Bankruptcy Code, receivership or assignment for the benefit of creditors at any time prior to the Trustee's receipt of the entirety of the Settlement Amount; or (b) an involuntary insolvency proceeding is commenced against Davis at any time prior to the Trustee's receipt of the entirety of the Settlement Amount, the Trustee shall be entitled to immediate stay relief to obtain injunctive relief to enforce Davis' non-compete and non-solicitation obligations.

The Stipulation also requires the Jade/Davis Parties to provide the Trustee and his professionals with various financial information including future federal income tax returns and financial statements until the Settlement Amount is paid in full, so that the Trustee may ensure that the Jade/Davis Parties are complying with their continuing obligations under the Stipulation. The Trustee has agreed to keep the Additional Financial Disclosures confidential absent entry of an order compelling disclosure by a Court of competent jurisdiction after notice and an opportunity to object have been provided to the Jade Group Entities and Davis.

**Mutual General Releases (Excluding Obligations Under the Stipulation)**

As part of the Settlement, the Jade/Davis Parties have agreed to waive any and all claims that each of the Jade Group Entities and/or Davis may have the right to assert against the Bankruptcy Estate and the Trustee, including, but not limited to, any claim rights under 11 U.S.C. §§ 502 and 503. In exchange, upon receipt of the Settlement Amount in full, the Trustee shall be deemed to have released any and all claims against the Jade Group Entities; and upon receipt of the first $295,000.12 of the Settlement Amount, the Trustee shall be deemed to have released any and all claims against Davis.

12

## IV. Legal Standard for Settlement

24.     Bankruptcy Rule 9019(a) provides: "On motion . . . and after a hearing on notice to creditors, the debtor . . . and to such other entities as the court may designate, the court may approve a compromise or settlement."

25.     As this Court has previously found, "approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion." *In re Arrow Air, Inc.,* 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988) (Cristol, J.) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602-03 (5th Cir. 1980); *Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.),* 762 F.2d 185, 189 (2d Cir. 1985); *In re Prudence Co.,* 98 F.2d 559 (2d Cir. 1938), cert. denied sub nom. *Stein v. McGrath*, 306 U.S. 636 (1939)).

26.     The test is whether the proposed settlement "falls below the 'lowest point in the range of reasonableness.'" *Arrow Air*, 85 Bankr. 891 (quoting *Teltronics Servs.*, 762 F.2d 189; *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822 (1983)).

27.     According to the United States Eleventh Circuit Court of Appeals, when a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:

(a)     the probability of success in the litigation;

(b)     the difficulties, if any, to be encountered in the matter of collection;

(c)     the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d)     the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.),* 898 F.2d 1544 (11th Cir. 1990). *See Jackson Brewing*, 624 F.2d 602, quoted in *Arrow Air*, 85 B.R. 891.

28.     As to the *Justice Oaks* factors:

**The Probability of Success in the Litigation**

As stated above, the Trustee and his professionals believe that the Estate possesses a variety of claims and causes of action against the Jade/Davis Parties, some of which are stronger than others. And while the Trustee believes that he is likely to prevail on some, if not all of the claims, achieving such a result will likely require protracted litigation, which will be time consuming, expensive and inherently risky.

**The Difficulties, if any, to be Encountered in the Matter of Collection**

Based upon, among other things: (a) the Trustee and his professionals' review and analysis of the Jade Group Financial Information and the Davis Financial Information; and (b) the information, documents and operational knowledge obtained during the site visit conducted by the Trustee's accountants, it is clear collection of any judgments the Trustee might obtain against Davis and/or the Jade Group Entities would be extremely difficult. The Davis Financial Information reflects that Davis has minimal non-exempt assets and that his primary source of income is his compensation from the Jade Group Entities. And the Trustee believes that non-consentual collection efforts against the Jade Group Entities would be equally difficult. Among other things, the Jade Group Entities: (a) do not regularly maintain excess cash; (b) lease much of their equipment; (c) finance most of their receivables; and (d) operate on rather thin margins. Additionally, none of the Jade Group Entities' employees (including Davis) have non-compete or non-solicitation agreements, and it is likely that meaningful judgments against the Jade Group Entities would result in the cessation of operations and the commencement of operations through new entities.

**The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It**

As stated above, while the Trustee believes that the Estate possesses a variety of claims and causes of action against the Jade/Davis Parties, based on the proffered

defenses, the Trustee believes that few would be decided on summary judgment. Certain of the potential claims are based on complex legal theories that would require extensive discovery and the need for experts, which will be time-consuming and costly. In addition, it is likely that some or all of the litigation targets would not consent to the entry of final orders by the Bankruptcy Court, thereby increasing the expense of litigation and attendant time frames. And if the Jade Group Entities choose to cease operations in the event of litigation, any ensuing judgments obtained would likely by uncollectable.

**The Paramount Interest of the Creditors and a Proper Deference to Their Reasonable Views in the Premises**

The creditors in this case are comprised primarily of: (a) trade creditors; and (b) individuals who have alleged a variety of medical malpractice related claims against the Debtor (collectively, the "Med Mal Claimants"). And while the Trustee is mindful of the sensitive nature of the Med Mal Claimants' claims, the Trustee's fiduciary and statutory duty is to marshal assets, reduce potential claims to money and make a distribution to all creditors. The Trustee asserts that as a result of the Settlement and the attendant savings in litigation costs and risk, the creditors will yield a greater recovery than if the Trustee were to engage in protracted litigation.

29. For the reasons set forth herein, the Trustee asserts that the Settlement meets the standards set forth in *In re Justice Oaks II*, and therefore, recommends approval of the Settlement because it is fair and reasonable, falls within the reasonable range of possible litigation outcomes, and is in the best interest of the Estate and its creditors.

**Authority to Execute Necessary Documents**

30. Assuming that the Settlement is approved, the Trustee seeks authority to: (a) take such actions; and (b) execute such documents, as he deems reasonable, necessary and/or desirable to effectuate the Settlement.

**Retention of Jurisdiction**

31.    Finally, assuming that the Settlement is approved, the Trustee requests that the Court retain sole and exclusive personal and subject matter jurisdiction to: (a) interpret, implement and enforce (i) the terms and conditions of the Stipulation, the Motion and the Approval Order, (ii) the Settlement and (iii) all related matters; and (b) adjudicate any and all disputes of any type arising from or related to (i) the Stipulation, the Motion and the Approval Order, (ii) the Settlement and (iii) all related matters.

**WHEREFORE**, Scott N. Brown, as Chapter 7 trustee of the bankruptcy estate of SRAI, Inc., respectfully requests this Honorable Court enter an Order (1) granting the instant Motion, (2) approving the Stipulation and the Settlement; (3) authorizing the Trustee to (a) take such actions and (b) execute such documents, as he deems reasonable, necessary and/or desirable to effectuate the Settlement; (4) retaining  sole and exclusive personal and subject matter jurisdiction to: (a) interpret, implement and enforce (i) the terms and conditions of the Stipulation, the Motion and the Approval Order, (ii) the Settlement and (iii) all related matters; and (b) adjudicate any and all disputes of any type arising from or related to (i) the Stipulation, the Motion and the Approval Order, (ii) the Settlement and (iii) all related matters; and (5) granting such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished this 29th day of October, 2014 as follows

via electronic transmission to

Adrian J Alvarez    aalvarez@hpslegal.com, service@hpslegal.com;sperez@hpslegal.com
Adrian J Alvarez    aalvarez@wsh-law.com, service@hpslegal.com;sperez@hpslegal.com
Marc P Barmat    ndixon@furrcohen.com,
mbarmat@furrcohen.com;atty_furrcohen@bluestylus.com

Andrew M. Bellinson     bellinsoncourt@bellsouth.net, bellinsoncourt2@gmail.com
Michael C Compo     mcompolaw@gmail.com, officemcompolaw@gmail.com
Ross R Hartog     rhartog@mrthlaw.com,
ecfnotices@mrthlaw.com;ycandia@mrthlaw.com;gruiz@mrthlaw.com;mrthbkc@gmail.com;
acastro@mrthlaw.com
Matthew Mazur     mm@flhealthlaw.com, mazurpaecf@gmail.com
Office of the US Trustee     USTPRegion21.MM.ECF@usdoj.gov
Gregg J. Ormond     gjo@ormondlaw.com, nrb@ormondlaw.com;jr@ormondlaw.com
David A Ray     dray@draypa.com,
draycmecf@gmail.com;sramirez.dar@gmail.com;bkc@draypa.com
Brian G Rich     brich@bergersingerman.com,
efile@bergersingerman.com;bwalter@bergersingerman.com;efile@ecf.inforuptcy.com
Harry J Ross     hross@hjrlaw.com, jerri@hjrlaw.com

and via first class U.S. Mail upon all parties on the attached service list


                              Respectfully submitted,


                              /s/ Brett M. Amron
                              Brett M. Amron
                              Florida Bar No. 148342
                              Bast Amron LLP
                              Attorneys for the Trustee, Scott N. Brown
                              1 S.E. Third Avenue – Suite #1440
                              Miami, Florida 33131
                              Telephone:  (305) 379-7904
                              Facsimile:  (305) 379-7905
                              bamron@bastamron.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:                                                    Case No.:  13-31119-BKC-JKO
                                                          Chapter 7
**SRAI, INC.**
EIN#XX-XXX7489

_____Debtor._____/

### STIPULATION TO COMPROMISE CONTROVERSY AND MUTUAL GENERAL RELEASE BY AND BETWEEN TRUSTEE AND (A) JADE HOLDINGS GROUP, LLC, (B) SURGERY CENTER OF BROWARD, LLC, (C) STRAX LONGEVITY INSTITUTE A/K/A STRAX WELLNESS, (D) COSMETIC SURGERY ASSOCIATES OF BOCA D/B/A BOCA NEW LOOK, (E) BOCA RATON SURGERY CENTER, LLC, (F) STRAX REJUVENATION OF BOCA RATON, AND (G) JEFF DAVIS

This Stipulation to Compromise Controversy and Mutual General Release By and Between Trustee and (A) Jade Holdings Group, LLC, (B) Surgery Center of Broward, LLC, (C) Strax Longevity Institute a/k/a Strax Wellness, (D) Cosmetic Surgery Associates of Boca d/b/a Boca New Look, (E) Boca Raton Surgery Center, LLC, (F) Strax Rejuvenation of Boca Raton and (G) Jeff Davis (the "Stipulation") is entered into by and between, on the one hand, Scott N. Brown, solely in his capacity as Chapter 7 trustee (the "Trustee") of the bankruptcy estate of SRAI, Inc. (the "Bankruptcy Estate" or the "Estate"), and on the other: (a) Jade Holdings Group, LLC ("Jade"); (b) Surgery Center of Broward, LLC ("SCB");  (c) Strax Longevity Institute a/k/a Strax Wellness ("SLI"); (d) Cosmetic Surgery Associates of Boca d/b/a Boca New Look ("CSAOB"); (e) Boca Raton Surgery Center, LLC ("BRS"); (f) Strax Rejuvenation of Boca Raton ("SRBR"), and (g) Jeff Davis ("Davis").[1]  This Stipulation

---

[1] Jade, SCB, SLI, CSAOB,  BRS and SRBR may sometimes be collectively referred to as the "Jade Group Entities." The Jade Group Entities and Davis may sometimes be collectively referred to as the "Jade/Davis Parties," and the Trustee and the Jade/Davis Parties may sometimes be collectively referred to as the "Settlement Parties."





EXHIBIT

**A**

is intended to resolve all matters between, on the one hand, the Trustee and the Bankruptcy Estate, and on the other, the Jade Group Entities and Davis, including, but not limited to: (a) any and all claims that the Trustee may have the right to assert against the Jade/Davis Parties arising from or related to the above-captioned bankruptcy case (the "Bankruptcy Case"); and (b) any and all claims that the Jade/Davis Parties may have the right to assert against the Trustee and the Bankruptcy Estate arising from or related to the Bankruptcy Case.

## RECITALS

**WHEREAS**, the Bankruptcy Case commenced with the filing of a voluntary Chapter 7 bankruptcy petition (the "Petition") by the Debtor, SRAI, Inc. (the "Debtor") on September 3, 2013 (the "Petition Date"). Subsequently, Scott N. Brown was appointed as Chapter 7 trustee of the Debtor's Bankruptcy Estate;

**WHEREAS**, prior to the Petition Date, the Debtor was primarily engaged in the business of marketing and providing elective surgical and non-surgical cosmetic procedures, including, but not limited to, body, breast, face, hair loss, skin care and vaginal procedures. The Debtor's primary place of business was located at 300 N. University Drive, Suite A-202, Sunrise, Florida (the "Premises");

**WHEREAS**, the Debtor advised the Trustee that it ceased operations immediately prior to filing the Petition;

**WHEREAS**, Paragraph 10 of the Debtor's Statement of Financial Affairs (the "SOFA")(ECF No. 1, Page 33) reflects that on August 30, 2013, the Debtor assigned its leasehold interests in the real properties located at: (a) 4300 North University Drive, Units E200-205, Lauderhill, FL 33351 and (b) 4300 North University Drive, Units A200-A207, F200-F201 and F202-F203, Lauderhill, FL 33351, to SCB and Jade, respectively;

2



**WHEREAS**, the Amendment to SOFA (ECF No. 20, Pages 1 & 2) reflects that on August 30, 2013, the Debtor also transferred all of its scheduled equipment to Jade;

**WHEREAS**, as detailed in the *Trustee's Expedited Agreed Motion for Entry of Order Determining that Appointment of Patient Care Ombudsman is Not Necessary* (ECF No. 11), Debtor's counsel advised the Trustee that the "[c]ustomer lists or other compilations containing personally identifiable information" listed on Line 24 of Schedule "B" (collectively, the "Medical Records") were also transferred pre-petition to Jade and/or SCB;

**WHEREAS**, the Trustee asserts that the Jade/Davis Parties are continuing to operate substantially the same business as the Debtor at the Debtor's former Premises and with most of the Debtor's former employees, equipment, data, intellectual property, customer lists and business model;

**WHEREAS**, the Debtor's 2012 Federal Income Tax Return reflects that its shareholders are: (a) Jeff Davis with a 34.906509% interest; (b) Albert Auer with a 12.498750% interest; (c) Phil Feanny with a 7.499250% interest; (d) Michael Garnick with a 26.627337% interest; (e) Ralph Maling with a 17.288271% interest; and (f) Tammy Pope with a 1.179883% interest. Accordingly, Davis is an "insider" of the Debtor, as that term is defined in Section 101 of the Bankruptcy Code;

**WHEREAS**, Davis is the controlling equity member and an officer, director and/or manager of each of the Jade Group Entities;

**The Inter-Company Transactions**

**WHEREAS**, the Trustee asserts that the business, finances and operations of the Debtor and the Jade Group Entities were inextricably intertwined. Among other things, the Debtor and the Jade Group Entities: (a) possessed commonality of ownership; (b) utilized many of the same employees and independent contractors; (c) shared office space; (d) had common creditors; and (e) routinely loaned funds to each other, which loans were either (i)

not evidenced by loan documents; or (ii) which loan documents were not executed and recorded contemporaneously with the purported loan transactions. Davis and the Jade Group Entities dispute the Trustee's assertions;

WHEREAS, the Debtor's Schedule "D" lists, among other purportedly secured debts: (a) $600,000.00 due to Jade Group; and (b) $221,666.00 due to Davis (collectively, the "Jade/Davis Schedule D Debt"). The Trustee disputes Jade and Davis' characterization as secured creditors and asserts that the Jade/Davis Schedule D Debt can be recharacterized as equity and/or equitably subordinated. Jade and Davis dispute the Trustee's assertion;

WHEREAS, the Debtor's Schedule "F" lists Jade as an unsecured creditor with an "unknown" amount due for "[m]anagement fees." The Trustee asserts that Jade is not entitled to the payment of any management fees, which assertion Jade disputes;

Schedule "G"

WHEREAS, the Debtor's Schedule "G" reflects the existence of three (3) purportedly executory contracts between the Debtor and Jade with respect to: (a) "Strax Trademark License Agreement;" (b) "Trademark License Agreement for use of Strax. Trademark for successive one year terms unless otherwise terminated upon 30 days written notice;" and (c) "Management Services Agreement dated January 1, 2006, for one year renewing for successive one year terms, terminable upon 90 days after written notice" (collectively, the "Alleged Debtor/Jade Executory Contracts"). The Trustee asserts that the Alleged Debtor/Jade Executory Leases are not executory leases but rather, property of the Estate, which assertion Jade disputes;

WHEREAS, the Trustee asserts that the Debtor's books, records and tax returns reflect that during the four (4) year period immediately preceding the Petition Date (the "Avoidance Period"): (a) in excess of $858,000.00 was paid by or for the benefit of the Debtor to Davis; (b) in excess of $1.6 million was transferred by the Debtor to Jade; (c)

approximately $1.4 million was transferred by the Debtor to SCB; and (d) approximately $480,000.00 was transferred by the Debtor to Strax Wellness Center. The Jade/Davis Parties assert, among other things, that good and valid business reasons exist for the above-referenced transfers and that said transfers were made in exchange for reasonably equivalent value, which assertions the Trustee disputes;

WHEREAS, the Trustee asserts that the Debtor's books, records and tax returns reflect that as of the Petition Date: (a) BSC owed the Debtor $1.4 Million; (b) Strax Wellness owed the Debtor $1,150,000.00 and (c) Strax Longevity owed the Debtor $550,000.00. The Jade Group Entities and Davis assert, among other things, that the above-referenced inter-company loan receivables are subject to certain set-offs, which assertion the Trustee disputes;

WHEREAS, based upon, among other things: (a) a review of information and documentation provided by the Debtor and third parties; (b) Davis' Section 341 Meeting of Creditors' (the "341 Meeting") testimony; (c) information obtained during settlement conferences with Davis and his counsel; and (d) information obtained by the Trustee and his attorneys, accountants and financial advisors, the Trustee asserts that he possesses a variety of claims and causes of action against, among others, the Jade/Davis Parties, including, but not limited to: (a) successor liability/mere continuation claims against the Jade Group Entities; (b) Chapter 5 and state law avoidance claims against the Jade Group Entities; (c) Chapter 5 and state law avoidance claims against Davis; (d) claims for re-characterization of Davis, and Jade's purported loans to equity and/or subordination; (e) collection of inter-company loans due to the Debtor from the Jade Group Entities; and (f) breach of fiduciary duty claims against Davis. Davis and the Jade Group Entities dispute the Trustee's assertions;



WHEREAS, as detailed on the record at the Status Conference on July 15, 2014, in light of, among other things: (a) the expense and uncertainty of litigation; (b) the expense and uncertainty of collection with respect to any judgment(s) the Trustee may obtain against any or all of the Jade/Davis Parties if he were to prevail in litigation; and (c) the likelihood that protracted litigation between the Estate and the Jade/Davis Parties would result in the cessation of operations by the Jade Group Entities, which operations are the primary source from which the Jade/Davis Parties can fund a settlement; and (d) in order to provide for the expeditious administration of this Estate and ensure that the totality of any settlement recovery is not consumed on administrative expenses, the Trustee and the Jade/Davis Parties have been engaged in settlement discussions;

WHEREAS, in connection with the settlement discussions, and as a material inducement to the Trustee's entry into this Stipulation, Davis and the Jade Group Entities have, among other things, provided the Trustee and his professionals with confidential financial statements, tax returns and other financial and operational information for each of the Jade Group Entities (collectively, the "Jade Group Financial Information"), upon which the Trustee has materially relied in entering into this Stipulation and the settlement detailed herein;

WHEREAS, in connection with the settlement discussions, and as a material inducement to the Trustee's entry into this Stipulation, Davis has provided the Trustee, confidential financial information comprised of: (a) copies of his 2010, 2011 and 2012 Federal income tax returns, plus Form W-2 Wage and Tax Statement for year 2013 (collectively, the "Davis Tax Returns"); and (b) sworn financial disclosures in the form of draft bankruptcy schedules and a statement of financial affairs (the "Davis Sworn Financial Disclosures," and collectively with the Davis Tax Returns, the "Davis Financial Information"), upon which the Trustee has materially relied in entering into this Stipulation. The Trustee

agrees to keep the Jade Group Financial Information and the Davis Financial Information confidential absent entry of an order compelling disclosure by a Court of competent jurisdiction after notice and an opportunity to object have been provided to the Jade Group Entities and Davis, and the Trustee agrees not to oppose any reasonable, good-faith efforts of Jade Group Entities and Davis to protect the confidentiality of the financial information;

**WHEREAS**, the Jade Group Entities and Davis do not dispute that portions of the Debtor's business operations were transferred pre-petition to the Jade Group Entities. However, Davis and the Jade Group Entities assert that the value of the transfer(s) is substantially less than the value ascribed to them by the Trustee, which assertion the Trustee disputes;

**WHEREAS**, a review of the Jade Group Financial Information, together with representations and warranties made by Davis to the Trustee regarding the financial condition of the Jade Group Entities, reflects that the only meaningful source from which the Jade Group Entities can fund a meaningful settlement with the Estate is continuing cash flow from operations over a multi-year period;

**WHEREAS**, a review of the Davis Financial Information, together with representations and warranties made by Davis to the Trustee regarding his financial condition, reflects, among other things: (a) that Davis had limited non-exempt assets; and (b) that Davis' sole source of meaningful income from which he can fund a settlement with the Estate is his compensation from the Jade Group Entities;

## AGREEMENT TO SETTLE

**WHEREAS**, given, among other things: (a) the expense and uncertainty of litigation; (b) the expense and uncertainty of collection with respect to any judgment(s) the Trustee may obtain against any or all of the Jade/Davis Parties if he were to prevail in litigation; (c) the likelihood that protracted litigation between the Estate and the Jade/Davis Parties would

result in the cessation of operations by the Jade Group Entities, which operations are the primary source from which the Jade/Davis Parties can fund a settlement; (d) the financial condition of the Jade/Davis Parties as reflected in the Jade Group Financial Information and the Davis Financial Information; and (e) in order to provide for the expeditious administration of this Estate and ensure that the totality of any settlement recovery is not consumed on administrative expenses, the Settlement Parties have agreed to settle all matters between the Bankruptcy Estate and the Jade/Davis Parties, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and considerations set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Settlement Parties agree to the following terms and conditions:

1.    **RECITALS**:  The Settlement Parties agree that the recitals above are true and correct.

2.    **THE SETTLEMENT**: Subject to entry of a final, non-appealable order of the Bankruptcy Court (the "Approval Order"), the Settlement Parties agree as follows:

**As to Davis and the Jade Group Entities**:

A.    In full and final settlement of any and all claims the Trustee may have the right to assert against (i) Davis and (ii) any and all of the Jade Group Entities in the Bankruptcy Case, Davis and each of the Jade Group Entities, jointly and severally, agree to: (i) pay to the Trustee, and the Trustee agrees to accept, the total sum of $750,000.40  in cleared funds (the "Settlement Amount"), payable as follows: (a) one (1) payment of $25,000.00 on or before November 15, 2014; (b) one (1)  payment of $25,000.00 on or before December 15, 2014; (c) one (1) payment of $25,000.00 on or before January 15,



2015; (d) one (1) payment of $25,000.00 on or before February 15, 2015;[2] and (e) sixty (60) equal, consecutive, monthly installments of $10,833.34 each (collectively, the "Monthly Installment Payments"), beginning on March 15, 2015, and continuing on the 1st day of each month thereafter, until paid in full; and (ii) waive any and all claims that each of the Jade Group Entities and/or Davis may have the right to assert against the Bankruptcy Estate and the Trustee, including, but not limited to, any claim rights under 11 U.S.C. §§ 502 and 503. However, the Settlement Amount shall be reduced from $750,000.40 to $700,000.00 in the event that the Jade/Davis Parties pay such amount no later than thirty-six (36) months following entry of the Approval Order. In addition, as a material inducement to the Trustee's entry into this Stipulation, each of the Jade Group Entities, jointly and severally agree (i) to execute such documents as the Trustee reasonably deems reasonable, necessary and/or desirable to grant the Bankruptcy Estate a first priority blanket lien on all presently owned or hereafter acquired tangible and intangible assets of each of the Jade Group Entities to secure payment of the Jade Group Settlement Amount, and (ii) hereby consent to the Trustee recording and/or filing such documents or instruments, and taking such actions, as the Trustee deems reasonable, necessary and/or desirable to perfect said security interests.

Further, as a material inducement to the Trustee's entry into this Stipulation, Davis hereby irrevocably agrees: (a) not to compete, directly or indirectly, with any of the Jade Group Entities for a period of fifteen (15) months following an event of default under this Stipulation; (b) not to have any direct or indirect involvement and/or affiliation of any type with any person or entity in substantially the same business as that of any of the Jade Group Entities for a period of fifteen (15) months following an event of default under this

---

[2] The first four (4) payments of $25,000.00 each due on 11/15/14, 12/15/14, 1/15/15 and 2/15/15 and totaling $100,000.00 in the aggregate, shall be collectively referred to as the "Initial Payments."



Stipulation; and (c) not to directly or indirectly solicit, employ or compensate any employee or independent contractor of any of the Jade Group Entities in a business substantially the same as that of the Jade Group Entities for a period of fifteen (15) months following an event of default under this Stipulation. As additional security for prompt payment of the Initial Payments, Davis irrevocably agrees to: (a) grant the Estate a second priority lien on his residential real property bearing the address: 1316 Middle River Drive, Ft. Lauderdale, Florida 33304 (the "Davis Real Property"), and (b) execute all documents the Trustee reasonably deems reasonable, necessary or desirable to effectuate and perfect same. The Trustee agrees to release the Estate's security interest in the Davis Real Property dollar for dollar upon the Estate's receipt of any portion of the Initial Payments, and in its entirety upon receipt of the Initial Payments in total ($100,000.00); provided however, the Trustee shall not be required to provide or record partial releases.

In the event that Davis: (a) commences any insolvency proceeding including, but not limited to, filing a voluntary bankruptcy petition under any Chapter of the Bankruptcy Code, a receivership or an assignment for the benefit of creditors at any time prior to the Trustee's receipt of the entirety of the Initial Payment; or (b) an involuntary insolvency proceeding is commenced against Davis at any time prior to the Trustee's receipt of the entirety of the Initial Payment: (a) as to a voluntary filing, Davis irrevocably agrees that the Trustee shall be entitled to immediate and complete *ex parte in rem* stay relief to foreclose the Estate's security interest in the Davis Real Property; and (b) as to an involuntary filing, the Trustee is hereby irrevocably authorized to file an agreed *ex parte* motion seeking complete *in rem* stay relief to foreclose the Estate's security interest in the Davis Real Property, which Davis irrevocably agrees to support. If Jeff Davis either voluntarily or involuntarily becomes a debtor in an insolvency proceeding, such insolvency proceeding will not be considered an

event of default as to the Jade Group Entities and will not be cause for an acceleration of the Jade Group Entities' financial obligations to the Estate under this Stipulation.

In addition, as additional security for prompt payment of the Settlement Amount, Davis agrees to: (a) grant the Estate a second priority lien on his 2011 Porsche Panamera, VIN WP0AA2A74BL018074 (the "Vehicle");and (b) execute all documents the Trustee reasonably deems reasonable, necessary or desirable to effectuate and perfect same. The Trustee agrees to release the Estate's security interest in the Vehicle dollar for dollar upon the Estate's receipt of any portion the Monthly Installment Payments up to a total of $30,000.00 and will release the Estate's security interest in the Vehicle in total upon the earlier of: (a) payment in full of the Initial Payments plus the first three (3) Monthly Installment Payments (totaling $32,500.02); or (b) payment in full of the Initial Payments plus an additional $32,500.02 lump-sum payment (to be applied to the outstanding balance of the Settlement Amount); provided however, the Trustee shall not be required to provide or record partial releases.

The Trustee further agrees to release Davis from his joint and several liability to pay the Settlement Amount upon the Estate's receipt of: (a) the Initial Payments ($100,000.00); and (b) the first 18 Monthly Installment Payments (totaling $195,000.12). Accordingly, Davis shall have no further personal liability to pay the Settlement Amount upon the Estate's receipt of: (a) the Initial Payments ($100,000.00); and (b) $195,000.12 of the Monthly Installment Payments.

Each payment shall be made by: (a) check, cashier's check or attorney trust account check made payable to "Scott N. Brown, Trustee" and delivered to the Trustee c/o Bast Amron LLP, Suntrust International Center, 1 S.E. 3rd Avenue - #1440, Miami, Florida 33131; or (b) by wire transfer to the Trustee. All payments due prior to the entry of a final, non-appealable order approving this Stipulation (the "Approval Order") shall be held in

Case No. 13-31119-BKC-JKO

escrow by the Trustee pending entry of the Approval Order.  If, however, the Stipulation is not approved by the Bankruptcy Court, the Trustee shall promptly return to the paying party all funds received pursuant to this Stipulation.

The Settlement Parties further agree that upon the occurrence of any of the following events, the entire remaining unpaid balance of the Settlement Amount shall be due within seven (7) days of the occurrence of such event unless otherwise agreed to in writing by the Trustee: (a) the sale, assignment, or transfer of more than a total of 10% of Davis' equity interest in any one of the individual Jade Group Entities; (b) the sale, assignment, or transfer of any single asset of any one of the individual Jade Group Entities with a fair market value in excess of $25,000.00; (c) the sale, assignment, or transfer of assets of any of the Jade Group Entities with a fair market value in excess of $75,000.00 in the aggregate in any 24 month period; (d) a change of control in the ownership of any of the Jade Group Entities which results in Davis no longer being in control of any one of the Jade Group Entities; or (e) Davis either directly or indirectly competing with any of the Jade Group Entities (collectively, the "Acceleration Events"). In the event that any of the Acceleration Events occur, Davis and each of the Jade Group Entities shall immediately provide written notice of same, and the remaining unpaid balance of the Settlement Amount shall be due and payable no later than seven (7) days following the event that constitutes the Acceleration Event, unless said Acceleration Event is waived by the Trustee in writing based on the sound exercise of his business judgment. If payment in full is not received by the Trustee within such seven (7) day period, or if Davis or any of the Jade Group Entities fail to provide immediate notice to the Trustee of an Acceleration Event, the Trustee, after notice and an expedited hearing, may exercise all default remedies under this Stipulation. Notwithstanding the preceding, in the event of a default as a result of the incapacitation or death of Davis, the Trustee's default remedies against Davis and his probate estate shall be

00286213.DOCx                                          12

limited to a judgment for $295,000.12 less any payments received by the Trustee under this Stipulation.

3.    **REPRESENTATIONS AND WARRANTIES BY DAVIS AND EACH OF THE JADE GROUP ENTITIES**: As a material inducement to the Trustee's entry into this Stipulation and the settlement set forth herein, Jeff Davis, both individually and in his capacity as an officer, director, manager, member, shareholder and/or authorized representative of each of the Jade Group Entities, represents and warrants that: (a) he is duly authorized by each of the Jade Group Entities to enter into and execute this Stipulation or he will take all necessary steps to ensure that this Stipulation is executed in accordance with the provisions of the Jade Group Entities' operating agreements; (b) until such time as the Settlement Amount is paid in full, Jeff Davis shall remain the individual in control of the operations and management of the Jade Group Entities; (c) the recitals set forth above are true, correct and accurate; and (d) the (i) Davis Financial Information and (ii) Jade Group Financial Information are (1) true, correct, complete and accurate, and (2) contain no material errors, material omissions or material misrepresentations. Davis, both individually and in his representative capacity, understands, agrees and acknowledges that the Trustee is materially relying on the representations and warranties set forth in this Stipulation, but for which the Trustee would not have entered into this Stipulation. In the event that the Trustee discovers that any of the representations and warranties made in this Stipulation are materially untrue, the Trustee, upon determination by the Bankruptcy Court of same, shall be entitled: (a) to retain all funds collected pursuant to this Stipulation for the benefit of the Estate; (b) to obtain the judgments detailed in Paragraph 4 below; and (c) to recover from Davis and the Jade Group Entities, all reasonable attorneys' fees and costs incurred by the Trustee in connection with same.



4.    **DEFAULT**:    In the event of a payment default, including, but not limited to, the failure of the Jade/Davis Parties to pay the total outstanding balance of the Settlement Amount in the event of an occurrence of an Acceleration Event, the Trustee, after: (a) providing written notice of default by U.S. mail and e-mail to the address and e-mail address(es) designated below (the "Notice of Default"); and (b) providing a  12  day cure period after transmission of the Notice of Default (the "Cure Period"), and provided that the default is not cured within the Cure Period, shall have the right to obtain, after notice and expedited hearing, consent[3] final judgments as follows: (a) $2 Million less any amounts paid to the Estate against each of the Jade Group Entities, jointly and severally; and (b) $500,000.00 less any amounts paid to the Estate against Davis. However, in the event that the Trustee has received $295,000.12 of the Settlement Amount, the Trustee shall not be entitled to any further relief against Davis individually.

5.    **OTHER SALIENT TERMS**: As a material inducement to the Trustee's entry into this Stipulation, the Jade Group Entities irrevocably agree that in the event that: (a) any of the Jade Group Entities commence any insolvency proceeding including, but not limited to, filing a voluntary bankruptcy petition under any Chapter of the Bankruptcy Code, receivership or assignment for the benefit of creditors at any time prior to the Trustee's receipt of the entirety of the Settlement Amount; or (b) an involuntary insolvency proceeding is commenced against any of the Jade Group Entities at any time prior to the Trustee's receipt of the entirety of the Settlement Amount, the Trustee shall be entitled to immediate and complete stay relief to enforce all rights, remedies and obligations as it relates to the Trustee's security interest in the assets of the Jade Group Entities.

---

[3] The Jade/Davis Parties irrevocably agree to take no actions to contest the entry of the referenced final judgments; provided however, that the Jade/Davis Parties shall have the right to tender to the Trustee, in cleared funds, the entirety of the past due amount prior to the hearing and seek cancellation of the hearing.

00286213.DOCX                                    14



As a material inducement to the Trustee's entry into this Stipulation, Davis irrevocably agrees, that in the event that: (a) Davis commences any insolvency proceeding including, but not limited to, filing a voluntary bankruptcy petition under any Chapter of the Bankruptcy Code, receivership or assignment for the benefit of creditors at any time prior to the Trustee's receipt of the entirety of the Settlement Amount; or (b) an involuntary insolvency proceeding is commenced against Davis at any time prior to the Trustee's receipt of the entirety of the Settlement Amount, the Trustee shall be entitled to immediate stay relief to seek injunctive relief to enforce the Davis non-compete and non-solicitation obligations set forth herein.

In addition, Davis and each of the Jade Group Entities agree to provide the Trustee and his professionals with copies of: (a) all future federal income tax returns filed by each of the Jade Group Entities and Davis until the Settlement Amount is paid in full; and (b) quarterly financial statements (balance sheets and income statements) for each of the Jade Group Entities until such time as the Settlement Amount is paid in full (collectively, the "Additional Financial Disclosures"), so that the Trustee may ensure that the Jade/Davis Parties are complying with their continuing obligations under this Stipulation. The Trustee agrees to keep the Additional Financial Disclosures confidential absent entry of an order compelling disclosure by a Court of competent jurisdiction after notice and an opportunity to object have been provided to the Jade Group Entities and Davis, and the Trustee agrees not to oppose any reasonable, good-faith efforts of Jade Group Entities and Davis to protect the confidentiality of the Additional Financial Disclosures.

6.    **RELEASE BY DAVIS AND EACH OF THE JADE GROUP ENTITIES:** In consideration for the settlement herein outlined and covenants contained in this Stipulation, Jeff Davis on behalf of himself and each of the Jade Group Entities, upon entry of the Approval Order, hereby releases the Trustee and the Bankruptcy Estate, and their

00286213.DOCX                                    15

respective successors, assigns, officers, managers, directors, shareholders, employees, agents, attorneys, accountants, representatives and affiliates (collectively referred to as the "Trustee Released Parties"), jointly and severally, from any and all claims, counterclaims, avoidance actions, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action for contribution and indemnity, whether arising at law or in equity, including without limitation, claims arising from or related to any act, omission, communication, transaction, occurrence, representation, misrepresentation, deceit, statement, promise, damage, breach of contract, fraud, commission of any tort, violation of any state or federal law, or usury, whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, or any other matter whatsoever or thing done, omitted or suffered to be done by any of the Trustee Released Parties, including but not limited to any and all claims arising from or related to the (a) Bankruptcy Case and (b) the Trustee's administration of the Bankruptcy Estate. **This release shall not include and does not affect the Trustee's obligations to Davis and the Jade Group Entities pursuant to this Stipulation.**

7.    <u>RELEASE BY THE TRUSTEE</u>:  In consideration for the settlement herein outlined and covenants contained in this Stipulation, the Trustee, on behalf of the Bankruptcy Estate, upon entry of the Approval Order and receipt of the Settlement Amount[4], hereby releases (a) Davis; and (b) each of the Jade Group Entities,  jointly and severally, from any and all claims, counterclaims, avoidance actions, demands, damages,

---

[4] As to Davis, the Trustees' release shall become effective upon the Estate's receipt of: (a) the Initial Payments ($100,000.00); and (b) the first 18 monthly installment payments (totaling $295,000.12).



debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action for contribution and indemnity, whether arising at law or in equity, including without limitation, claims arising from or related to any act, omission, communication, transaction, occurrence, representation, misrepresentation, deceit, statement, promise, damage, breach of contract, fraud, commission of any tort, violation of any state or federal law, or usury, whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, or any other matter whatsoever or thing done, omitted or suffered to be done by Davis and the Jade Group Entities: (a) arising from or related to  Davis and the Jade Group Entities' business dealings with the Debtors; and (b) that could be brought by the Estate against Davis and the Jade Group Entities in the Bankruptcy Case. **This release shall not include and does not affect the Jade Group Entities' and Davis' obligations to the Trustee and the Estate pursuant to this Stipulation.**

8.    **CHOICE OF LAW**:  This Stipulation shall be construed in accordance with the laws of the State of Florida, both substantive and remedial.

9.    **ENTIRE AGREEMENT**:  This Stipulation represents the entire understanding and agreement between the Settlement Parties, and supersedes any and all other agreements, either oral or in writing, between the Settlement Parties hereto with respect to the subject matter hereof.  The Settlement Parties stipulate and agree that no promise, warranty, representation, inducement or agreement, written or oral, not expressed or referred to in this Stipulation, has been made and/or relied upon.

10.    **MODIFICATIONS**:  This Stipulation may not be modified or amended in any respect whatsoever, except by a writing signed by all of the Settlement Parties.

00286213.DOCX                                    17

11.    **ASSIGNMENT**: The Trustee may assign his rights and obligations under this Stipulation upon approval of the Bankruptcy Court. The Jade/Davis Parties rights and obligations under this Stipulation are non-assignable.

12.    **WAIVER**: No waiver of any provisions of this Stipulation shall be valid unless in writing and signed by the party against whom charged.

13.    **CONSTRUCTION AND HEADINGS**:  In giving meaning to this Stipulation, the singular shall be held to include the plural, the plural shall be held to include the singular.  The Settlement Parties agree that the section headings contained herein are included for convenience only and are not to be deemed part of this Stipulation.

14.    **BINDING EFFECT**:  This Stipulation, upon execution, is binding upon the Settlement Parties hereto, their heirs, successors, and assigns.

15.    **REPRESENTATION AND WARRANTIES**:  The Settlement Parties mutually represent and warrant that: (a) they have full power and authority to negotiate, execute and perform the terms and provisions of this Stipulation; (b) the execution of this Stipulation does not put either of the Settlement Parties in violation of any agreements to which they are a party; and (c) the Stipulation is duly executed and delivered by the Settlement Parties and constitutes a legal, valid, and binding obligation enforceable in accordance with the terms hereof.

16.    **SEVERABILITY**:  If the event that any provision, or any portion of any provision herein is deemed to be invalid, unenforceable or illegal by any court of law, such provision or portion of a provision shall be severed and the remaining provisions of this Stipulation shall remain valid and enforceable.

17.    **ENFORCEMENT**:  Each party may enforce this Stipulation as a valid contract, and may obtain any lawful remedy including injunctive relief enforcing the Stipulation.  Each of the Settlement Parties irrevocably agree that the United States

Bankruptcy Court, Southern District of Florida, in the Bankruptcy Case (the "Bankruptcy Court") has sole and exclusive personal jurisdiction over the Settlement Parties and subject matter jurisdiction over the Proposed Settlement, and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Stipulation and resolve any and all disputes arising from or relating to the Proposed Settlement.

18.    **DRAFTING, ADVICE OF COUNSEL, AND VOLUNTARY EXECUTION**: The Settlement Parties acknowledge and agree that (i) each of the Settlement Parties has read, fully understands, and agrees to each page of this Stipulation; (ii) each of the Settlement Parties has had the benefit of the advice of counsel and has signed the Stipulation only after due consideration and consultation with its respective attorneys; (iii) each of the Settlement Parties has participated fully in negotiating and drafting the terms hereof; and (iv) each of the Settlement Parties has entered into this Stipulation freely and voluntarily, without duress, coercion or fraudulent inducement, and for valuable consideration. Accordingly, this Stipulation shall not be more strictly construed against either of the Settlement Parties than against the other.

19.    **CONSIDERATION**:  The Settlement Parties hereto acknowledge and agree that each is foregoing certain rights and assuming certain duties and obligations, which, but for this Stipulation, would not have been foregone or assumed.  Accordingly, the Settlement Parties agree that this Stipulation is fully and adequately supported by consideration and is fair and reasonable in all of its terms.

20.    **COUNTERPARTS**.  This Stipulation may be executed in counterparts which, taken together, shall constitute one and the same agreement, and facsimile signatures shall be deemed originals.



21.    **ATTORNEYS' FEES AND COSTS**:  Except as set forth in Paragraph 3 above, each of the Settlement Parties agrees to bear its own respective attorneys' fees, costs and expenses incurred in connection with the instant bankruptcy case, including, but not limited to, the costs incurred in connection with the negotiation and preparation of this Stipulation.

22.    **APPROVAL ORDER**:  The Trustee shall promptly seek the entry of the Approval Order from the Bankruptcy Court.

23.    **BEST EFFORTS**:  The Settlement Parties shall use their best efforts to obtain Bankruptcy Court approval of this Stipulation. Without limiting the foregoing, the Settlement Parties shall not take, or cause any persons or entities to take, any actions calculated or intended to decrease the likelihood of obtaining such approval.

24.    **FURTHER COOPERATION**: The Settlement Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein.

**SIGNATURES ON FOLLOWING PAGE**

Case No. 13-31119-BKC-JKO

Dated this _____ day of October, 2014

Jade Holdings Group, LLC

By: _____
Its: _____

Surgery Center of Broward, LLC

By: _____
Its: _____

Strax Longevity Institute a/k/a Strax Wellness

By: _____
Its: _____

Cosmetic Surgery Associates of Boca
d/b/a Boca New Look

By: _____
Its: _____

Boca Raton Surgery Center, LLC

By: _____
Its: _____

Strax Rejuvenation of Boca Raton

By: _____
Its: _____

Jeff Davis

Dated this _____ day of October, 2014

_____
Scott N. Brown, as Chapter 7 Trustee of the
Bankruptcy Estate of SRAI, Inc.

00286213.DOCX

21

(p)GREATAMERICA FINANCIAL
SERVICES CORPORATIO
PO BOX 609
CEDAR RAPIDS IA 52406-0609

Albert Auer
305 SW 17th St.
Boca Raton, FL 33432-7236

American Express Bank FSB
c/o Becket and Lee LLP
POB 3001
Malvern  PA 19355-0701

Atlantic Medsearch
5300 NW 33rd Av. #117
Ft. Lauderdale, FL 33309-6377

Barry Mukamal
One SE Third Ave 10 Fl
Miami, FL 33131-1710

Broward County Records, Taxes &
Treasury
Attn:  Bankruptcy Section
115 S. Andrews Ave. # A-100
Ft. Lauderdale, FL 33301-1818

CIT Finance LLC
10201 CENTURION PKWY. N #100
JACKSONVILLE, FL 32256-4114

Chimpoulis, Hunter and Lynn
7901 SW 36th St., #206
Davie, FL 33328-1914

DS1 Communications
PO Box 823408
South Florida, FL  33082-3408

David Perez
c/o Charles Flynn, Esq.
Stolzenberg, Gelles & Flynn
1401 Brickell Av. #825
Miami, FL 33131-3502

(p)SPRINT NEXTEL
CORRESPONDENCE
ATTN BANKRUPTCY DEPT
PO BOX 7949
OVERLAND PARK KS 66207-0949

Alexandria James
c/o Bastola & Kirwan, P.A.
7000 S.E. Federal Hwy. #310
Stuart, FL 34997-8682

American Express Plum Card
PO Box 650448
Dallas, TX 75265-0448

Avnel Wideman
c/o Lisa Levine, Esq.
Levine & Glassman
1655 N. Commerce Pkwy. #202
Fort Lauderdale, FL 33326-3276

Berger Singerman LLP
125 S. Gadsden Street
Suite 300
Tallahassee, FL 32301-1589

Broward County Revenue Collection
Div.
115 S Andrews Ave #A 100
Fort Lauderdale, FL 33301-1818

Carey M. Fischer, Esq.
800 S.E. Third Ave.
Suite 400
Fort Lauderdale, FL 33316-1152

Christina M. Campo
c/o Jorge Silva, Esquire
Silva and Silva, PA
236 Valencia Av.
Coral Gables, FL 33134-5906

Damaris Mejias
c/o Thomas Gamba, Esq.
Gamba and Lombana, PA
2701 Ponce de Leon Blvd., Mezzanine
Coral Gables, FL 33134-6020

Dept. of Revenue
Bankruptcy Section
P.O. Box 6668
Tallahassee, FL 32314-6668

Adriana Silva
c/o Michael Freeland, Esq.
Freedland Harwin, PL
110 SE 6th St.
Fort Lauderdale, FL 33301-5055

Allergan USA, Inc.
c/o Judy Cobin, T2-7B
2525 Dupont Drive
Irvine, CA 92612-1599

Arlene Lopez
175 SW 7th Street
1912
Miami, FL 33130-2960

BUNNELL & WOULFE P.A.
100 SE 3RD AVE
SUITE 1000
FORT LAUDERDALE, FL 33394-0053

Berger Singerman LLP
126 S. Gadsden St., #300
Tallahassee, FL 32301

Bunnell, Woulfe & Keller
One financial Plaza #1000
100 SE 3rd Av
Fort Lauderdale, FL 33394-0031

Charles W. Flynn
1401 Brickell Avenue, Suite 825
Miami, FL 33131-3502

Christine Williams
c/o Philip Freidin, Esq.
One Biscayne Tower #3100
2 South Biscayne Blvd.
Miami, FL 33131-1806

Damaris Mejias
19322 NW 42 Court
Miami, FL 33055-2205

Elsie Soto
c/o Robert B. Brown, III, Esq.
Whitfield, Bryson & Mason, LLP
3132 Ponce de Loen Blvd.
Coral Gables, FL 33134-6826

Estate of Rony Ellen Wendrow
c/o Carey M. Fischer, P.A.
800 SE Third Av. #400
Fort Lauderdale, FL 33316-1152

General Electric Capital Corporation
1010 Thomas Edison Blvd
Attention: Barbi Martin
Cedar Rapids, IA 52404-8247

DMS Inc
4700 SW 51 St #208
Davie, FL 33314-5500


Heman J. Russomanno III, Esq.
Russomanno & Borrello, P.A.
Museum Tower - Penthouse 2800
150 West Flagler Street
Miami, FL 33130-1536

Idell Frazer
c/o James S. Haliczer, Esq.
Haliczer, Pettis & Schwamm
One Financial Plaza, 7th Fl.
Fort Lauderdale, FL 33394-0015

Internal Revenue Service
POB 7346
Philadelphia, PA 19101-7346


Iolanda Jorge
c/o Matthew P. Leto, Esq.
Hall, Lamb & Hall, PA
2665 S. Bayshore Dr.
Miami, FL 33133-5468

J. Stuart Kirwan, III.
631 US Highway One, Ste. 202
North Palm Beach, FL 33408-4614

JULIO JARAMILLO
7700 N KENDALL DRIVE #203
MIAMI, FL 33156-7578


Jade Holdings Group, LLC
11380 Prosperity Farms Rd #221E
Palm Beach Gardens, FL 33410-3474

Jeffrey M. Feingold
Arnstein & Lehr LLP
120 S. Riverside Plaza
Suite 1200
Chicago, IL 60606-3941

Jeffry A. Davis
1316 Middle River Dr.
Fort Lauderdale, FL 33304-1559


Keith Baker
Dept. of Revenue
PO Box 6417
Tallahassee, FL   32314-6417

Kenderia Mather
c/o James S. Haliczer, Esq.
100 S.E. 3rd Avenue
7th Floor
Fort Lauderdale, FL 33394-0015

Kenderia Mather, as personal
representative
2843 Filmore Street, Apt. 206
Hollywood, FL 33020-4269


Kendrick Mitchell
c/o Ronald M. Zakarin, Esquire
Schwartz, Gold, Cohen et al.
54 SW Boca Raton Blvd.
Boca Raton, FL 33432-4725

Kim Sosely
c/o Scott Henratty, Esq.
Malvolve & Henratty
14 Rose Dr.
Fort Lauderdale, FL 33316-1012

Kimani Reeves PR of Estate of
Avnel Wideman, decedent
Lisa S Levine PA
1655 N Commerce Pkwy #202
Weston, FL 33326-3276


Loren Miller
c/o Robert Franklin, PA
2560 RCA Blvd. #111
Palm Beach Gardens, FL 33410-3338

Lula Stock
631 US Highway One
Suite 202
North Palm Beach, FL 33408-4614

Lulu Stock
c/o Jeff Vastola, Esq.
631 US Highway One, #202
North Palm Beach, FL 33408-4617


Malove & Henratty, PA
14 Rose Dr
Fort Lauderdale, FL 33316-1012

Mara Maitlin Botonis
c/o Jospeh D. Stewart, Esquire
2671 Airport Rd S #302
Naples, FL 34112-4810

Mara Maitlin Botonis
Joseph D Stewart Esq
2671 Airport Rd South Suite 302
Naples, FL 34112-4810


Maria Teresa Ramos and Welby Ramos
c/o Russomanno & Borrello, P.A.
Museum Tower - Penthouse 2800
150 West Flagler Street
Miami, FL 33130-1536

Maria Theresa & Welby Ramos
c/o Herman Russomanno
Russomanno & Borello
150 W. Flagler St. Penthouse 2800
Miami, FL 33130-1560

Market Technologies, Inc.
3172 Bradford Pl.
Birmingham, AL 35242-4602


Marta and Jose Rios
c/o Skip Pita, Esq.
Pita, DelPrado & Munoz
9350 S. Dixie Hwy. #1200
Miami, FL 33156-2945

Matthew R. Wendrow, As P.R. of the Estate of
c/o Carey M.Fischer, Esq.
800 S.E. Third Ave.
Suite 400
Fort Lauderdale, FL 33316-1152

McKesson Specialty Care Distribution Jt
Vent
Neil J Orleans Esq
1201 Elm Street #4800
Dallas TX 75270-2102

McKesson Specialty Distribution, LLC
15212 Collections Center Dr
Chicago, IL 60693-0152

Merz Aesthetics
Dept. 2073
Denver, CO 80291-0001

Michael J. Garnick
1290 Stockton Rd
Meadowbrook, PA 19046


Miriam Padilla-Distasi & Joseph Distasi
c/o Skip Pita, Esq.
Pita, DelPrado & Munoz
9350 S. Dixie Hwy. #1200
Miami, FL 33156-2945

Oslar Padron
c/o Steven Hunter, Esq.
Hunter, Williams and Lynch
75 Valencia Av. #1150
Coral Gables, FL 33134-6138

Phillip Calder
c/o Phillip M. Warren, PA
Rayvan Bldg. #300
3350 E. Atlantic Blvd.
Pompano Beach, FL 33062-5717

Phillip J Calder
5100 Yellow Pine Lane
Tamarac FL 33319-3558

Ralph L. Maling
1508 NE 5th Court
Fort Lauderdale, FL 33301-1328

Ralph Maling
300 Golfview Dr #205
N Palm Beach FL 33408-3509


Rimma Rubinov
c/o Julio Jaramillo, Esq,
7700 N, Kendall Dr, #808
Miami, FL 33156-7564

Rooter Express LLC
4741 New Jesup Hwy
Brunswick, GA 31520-1674

Samanta M. Ricatti
c/o Ronald M. Zakarin, Esquire
Schwartz, Gold, Cohen et al.
54 SW Boca Raton Blvd.
Boca Raton, FL 33432-4725

Summit Funding Group, Inc.
11500 Northlake Dr. #300
Cincinnati, OH 45249-1662

Swift Financial Corp
Capehart & SCatachard PA
8000 Midlantic Dr 300-S
Mt Laurel NJ 08054-1543

Swift Financial Corporation
Swift Capital
Capehart & Scarchard PA
8000 Midatlantic Dr #300 S
Mt Laurel, NJ 08054-1518

Toyota Motor Credit Corporation
c/o Becket and Lee LLP
POB 3001
Malvern  PA 19355-0701

Tribune Broadcasting Co.
c/o Benjamin Wise, Esq.
Brown & Joseph, Ltd.
PO Box 59838
Schaumburg, IL 60159-0838

U.S. Legal Support, Inc.
1 S.E. Third Av., #1250
Miami, FL 33131-1714

Univision Radio, Inc.
c/o Nathan A. Schwartz, Esquire
5255 N. Federal Hwy., 3rd Fl.
Boca Raton, FL 33487-4913

Univision Radio, Inc.
c/o Szabo Associates, Inc.
3355 Lenox Road NE
Suite 945
Atlanta, GA 30326-1357

WAQI/WQBA/WAMR/WRTO RADIO
800 Douglas Rd, Annex Bldg. #111
Coral Gables, FL 33134-3125

WHQT/WFLC/WEDR-FM Radio
c/o Szabo Associates, Inc.
3355 Lenox Road NE
Suite 945
Atlanta, GA 30326-1357

WHYI Clear Channel
7601 Riviera Blvd.
Miramar, FL 33023-6574

WMGE Clear Channel
7601 Riviera Blvd.
Miramar, FL 33023-6574

WPLG Channel 10
3401 W. Hallandale Beach Blvd.
Pembroke Park, FL 33023-5728

WSHE Clear Channel
7601 Riviera Blvd.
Miramar, FL 33023-6574

Wells Fargo Financial Leasing, Inc.
800 Walnut Street
MAC N0005-055
Des Moines, IA 50309-3605

Wsfl Tribune Broadcasting Company
2775 Sunny Isles Blvd.,Suite 100
Miami, Fl 33160-4078

Yamarys and Roberto Irizarry
c/o Charles Flynn, Esq.
Stolzenberg, Gelles and Flynn
1401 Brickell Av. #825
Miami, FL 33131-3502

Yolanda Westbrook
c/o Sean Cleary, Esq.
19 W. Flagler St., #618
Miami, FL 33130-4400

Allergan USA, Inc.
c/o David A. Ray, P.A.
901 South Federal Highay
Suite 300
Fort Lauderdale, FL 33316-1260

Andrew Bellinson
10800 Biscayne Blvd., #925
Miami, Fl 33161-7482

Arlene Lopez
c/o Michael C. Compo, P.A.
175 SW 7th St., #1912
Miami, FL 33130-2992

Christina M. Campo
Matthew E. Mazur, Jr.
2655 LeJeune Road, Suite 500
Coral Gables,, FL 33134

Christine Williams
Ross R. Hartog, Esquire
9130 So. Dadeland Boulevard,
Suite 1800
Miami, FL 33156-7849

Kenderia Mather
Adrian J. Alvarez Esq
One Financial Plaza, Seventh Floor
100 S.E. Third Avenue
Fort Lauderdale, FL 33394-0031

Marc P Barmat
2255 Glades Rd # 337W
Boca Raton, FL 33431-7382

SRAI, Inc.
4300 N. University Dr. #A-202
Lauderhill, FL 33351-6244

Pandora Media
2501 Network Pl.
Chicago, IL 60673-1025

Catalina Life Sciences
18005 Sky Park Cir.
Blvd. 54, #A/D
Irvine, CA 92614-6514

Ultimate Water
PO Box 024908
Miami, FL 33102-4908

Arnstein & Lehr, LLP
200 E Las Olas Blvd., #1700
Fort Lauderdale, FL 33301-2240